# United States District Court

EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION

MARVIN McALLISTER and          §
SANDRA M. McALLISTER          §
                              §
V.                            §          CASE NO. 4:10-CV-504
                              §          Judge Schneider/ Judge Mazzant
BAC HOME LOANS SERVICING, LP   §

### REPORT AND RECOMMENDATION OF
### UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint (Dkt. #17).  The Court, having considered the relevant pleadings, finds that Defendant's Motion to Dismiss should be granted in part and denied in part.

### BACKGROUND

Plaintiffs Marvin McAllister and Sandra M. McAllister filed this lawsuit in state court against BAC Home Loans Servicing, LP.   On September 24, 2010, Defendant removed this action to this Court.  On October 27, 2010, Plaintiffs filed an Amended Complaint (Dkt. #6).  On January 19, 2011, Plaintiffs filed their Second Amended Original Complaint (Dkt. #13).

On or about June 29, 2007, Plaintiffs purchased property located at 526 County Road 4850, Leonard, Texas (the "Property") and executed a Note payable to Worldwide Mortgage Corp. ("Worldwide") in furtherance of a loan for the purchase of the Property.  On or about the same day, a Deed of Trust to secure payment of the Note was executed by Plaintiffs.  The Deed of Trust names Mortgage Electronic Registration Systems, Inc. ("MERS") as the nominee for Worldwide.  The Note does not make any reference to MERS.

Upon information and belief, MERS, as nominee of Worldwide, assigned the Deed of Trust to Defendant in September 2009.  The assignment of the Deed of Trust also contained language that

the assignment also transferred any and all notes described in the Deed of Trust.

In September 2009, Plaintiffs received notice that their loan had allegedly been assigned to Defendant.  The Note stated that the assignment was effective August 6, 2009.  Since Plaintiffs had already made their September payment, Plaintiffs contacted Defendant to confirm the receipt of their August and September payments.  Plaintiffs further requested an address to send their future payments.  Defendant instructed Plaintiffs to stop payment on their August and September 2009 payments and to resend those payments directly to Defendant.  Plaintiffs followed those instructions.

In December 2009, Defendant sent Plaintiffs a statement that their monthly payment for December was $6,000.  Plaintiffs immediately contacted Defendant to inquire about the change in their monthly payment.  After numerous attempts to get assistance, Defendant informed Plaintiffs to continue making their monthly payment of $1,302.08, while it conducted an investigation.  As instructed, Plaintiffs continued to send in their regular monthly payments.  In January 2010, Defendant sent Plaintiffs a statement that their monthly payment was $2,156.44.  Throughout December 2009 to March 2010, Plaintiffs attempted to contact Defendant to follow up on their inquiry regarding the changes in their mortgage account.  Defendant never responded to Plaintiffs' numerous telephone messages and correspondence; however, Plaintiffs continued to make their regular monthly payments as they were instructed.  In the Spring of 2010, Plaintiffs were finally able to speak to an employee of Defendant, who told Plaintiffs to continue making their regular monthly payment of $1,302.08 while the employee investigated their account to find out when the statement showed an increase in the amount due each month.  Plaintiffs assert that they continued to make their regular monthly mortgage payments.

In July 2010, Plaintiffs received another statement showing that their monthly payment had

increased to $2,156.44, that Plaintiffs' past due amount was $11,625.18, and that Plaintiffs had a partial payment balance of $1,015.28.  Plaintiffs disputed the amount owed and continued to call Defendant to find out why it was not applying the payments to the balance of the Note, how Defendant came up with the past due amount, and why Defendant placed their payments in a suspense account, in violation of the FHA guidelines.  Plaintiffs called numerous times, left messages and telephone numbers, but no one from Defendant ever returned their calls.

Plaintiffs continued to make their regular monthly mortgage payments pursuant to the instructions from Defendant's employee.  In August 2010, Defendant began refusing and returning Plaintiffs' payments, and Defendant posted the Property for foreclosure on September 7, 2010. Plaintiffs used their best efforts to get an explanation from Defendant as to why their payments increased, what the actual balance was that was due, and why their payments were not credited to their account.  Defendant never returned their calls, and instead proceeded to foreclosure without providing Plaintiffs the right to reinstate or the right to cure.  Plaintiffs assert that they became totally frustrated in their efforts to communicate with Defendant and that Defendant's conduct of deliberately or negligently delaying and misleading Plaintiffs to the point of foreclosure was unconscionable.

Plaintiffs assert claims for breach of contract, unreasonable collection efforts, violations of the Texas Debt Collections Act "(TDCA"), and negligent misrepresentation, gross negligence, a request for declaratory judgment and specific performance.

On February 2, 2011, Defendant filed its motion to dismiss (Dkt. #17).  On March 4, 2011, Plaintiffs filed a response (Dkt. #21).  On March 25, 2011, Defendant filed a reply (Dkt. #24).

**LEGAL STANDARD**

Defendant moves for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which authorizes certain defenses to be presented via pretrial motions. A Rule 12(b)(6) motion to dismiss argues that, irrespective of jurisdiction, the complaint fails to assert facts that give rise to legal liability of the defendant. The Federal Rules of Civil Procedure require that each claim in a complaint include "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The claims must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).

Rule 12(b)(6) provides that a party may move for dismissal of an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The Court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In deciding a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). "The Supreme Court recently expounded upon the *Twombly* standard, explaining that '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Gonzalez*, 577 F.3d at 603 (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." *Id*. "It follows, that 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'shown' - 'that the pleader is entitled to relief.'" *Id*.

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion.  First, the Court identifies conclusory allegations and proceeds to disregard them, for they are "not entitled to the assumption of truth." *Iqbal*, 129 S.Ct. at 1951.  Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id*.  "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *Morgan v. Hubert*, 335 F. App'x 466, 469 (5th Cir. 2009).  This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950.

In determining whether to grant a motion to dismiss, a district court may generally not "go outside the complaint." *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).  When ruling on a motion to dismiss a *pro se* complaint, however, a district court is "required to look beyond the [plaintiff's] formal complaint and to consider as amendments to the complaint those materials subsequently filed." *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983); *Clark v. Huntleigh Corp.*, 119 F. App'x 666, 667 (5th Cir. 2005) (finding that because of plaintiff's *pro se* status, "precedent compels us to examine all of his complaint, including the attachments"); Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").  Furthermore, a district court may consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Scanlan*, 343 F.3d at 536.

## DISCUSSION AND ANALYSIS

Defendant asserts that Plaintiffs' Second Amended Complaint should be dismissed as Plaintiffs only assert conclusions without any factual support and that the lawsuit is only a delay tactic to avoid foreclosure.

**Breach of Contract Claim**

Plaintiffs base their breach of contract claims upon the following theories: (1) Defendant breached the contract because it lacks standing to foreclose; (2) Defendant breached the contract by failing to comply with HUD regulations; (3) Defendant breached the contract by violating the Texas Property Code; (4) Defendant breached the duty of good faith and fair dealing; (5) Defendant breached the contract by violating the Real Estate Settlement Procedures Act ("RESPA"); and (6) Defendant breached the Deed of Trust provisions.  Plaintiffs' Second Amd. Cmplt., paragraphs 18-34 (Dkt. #13).

Defendant first asserts that the breach of contract claim fails because the duty of good faith and fair dealing does not apply in the mortgage context.  To the extent that Plaintiffs are asserting a breach of contract claim based upon an alleged breach of duty of good faith and fair dealing, the Court agrees.  In Texas, there is "no special relationship between a mortgagor and mortgagee." *Collier v. Wells Fargo Home Mort.*, No. 7:04-CV-86, 2006 WL 1464170 at *8 (N.D. Tex. May 26, 2006) (citing *UMLIC VP LLC v. T & M Sales and Envtl. Systems, Inc.*, 176 S.W.3d 595, 612 (Tex. App.– Corpus Christi 2005, pet. denied)).  "Ordinarily, there is no such duty in lender/lendee relationships." *Vogel v. Travelers Indem. Co.*, 966 S.W.2d 748, 753 (Tex. App.-San Antonio 1998, no pet.)(citing *Federal Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706, 709 (Tex. 1990); *English v. Fischer*, 660 S.W.2d 521, 522 (Tex. 1983)).

Plaintiffs assert that there is a duty of good faith and fair dealing in contractual relationships under the UCC. "Because the Deed of Trust places a lien on real property, it is not governed by the UCC." *See Vogel*, 966 S.W.2d at 753 (citing Tex. Bus. & Comm. Code § 9.104(10); *Long v. NCNB–Texas Nat'l Bank*, 882 S.W.2d 861, 864 (Tex. App.–Corpus Christi 1994, no writ)).

Although Plaintiffs take issue with the cases cited by Defendant, Plaintiffs have not presented the Court with any authority to support their view that there is a duty of good faith and fair dealing in the mortgage context. *See Casterline v. Indy Mac/One West*, No. C-10-210, 2011 WL 11183 *6 (S.D. Tex. Jan. 3, 2011); *Smith v. National City Mortg*, No. A-09-CV-881, 2010 WL 3338537 *12 (W.D. Tex. Aug. 23, 2010). Furthermore, Plaintiffs fail to allege facts that would make such a claim plausible. Therefore, any breach of contract claim based upon a duty of good faith and fair dealing should be dismissed.

Defendant next moves to dismiss Plaintiffs' breach of contract claim because Plaintiffs' "split the Note" theory is fatally flawed and because insufficient facts are alleged to support such a claim. Plaintiffs assert that Defendant breached the contract by wrongfully attempting to foreclose on the Property because it lacked standing to foreclose. Plaintiffs further allege that MERS never held the Note and purportedly split the Note and the Deed of Trust, which resulted in a subsequent faulty assignment of the Note and Deed of Trust to Defendant. Essentially, Plaintiffs assert that the assignment from MERS to Defendant was defective.

The parties agree that in Texas, a formal assignment is not necessarily required to transfer a Note. However, Plaintiffs assert that assignment is the process by which Defendant claims to have become the holder or owner of the Note. Plaintiffs argue that proving the transaction through which the Note was acquired in this case requires Defendant to show that the Note, in addition to the Deed

of Trust, was transferred to it via assignment.  Plaintiffs argue that Defendant must prove a chain of

custody of the Note to show that it can enforce or foreclose on the Note.  Plaintiffs assert that they

have pleaded sufficient facts that Defendant was never the holder, transferee or owner of the Note.

Defendant asserts that the Note can be transferred without a written assignment or an

endorsement and that the Note in this case was endorsed in blank and the foreclosure notice of sale

identified Defendant as the mortgagee.  Defendant argues that a person in possession of a note

endorsed in blank, like the one in this case, is entitled to enforce it irrespective of any assignments.

Furthermore, Defendant asserts that Plaintiffs lack standing to challenge the assignment because

Plaintiffs do not allege they are parties to the assignment that is being contested.

A good explanation of MERS and Texas law can be found in *Richardson v. CitiMortgage,*

*Inc.*, No. 6:10-cv-119, 2010 WL 4818556 *5 (E.D. Tex. Nov. 22, 2010).  U.S. Magistrate Judge

Judith K. Guthrie explained as follows:

> Under Texas law, where a deed of trust, as here, expressly provides for MERS to have
> the power of sale, then MERS has the power of sale. *Athey v. MERS*, 314 S.W.3d 161,
> 166 (Tex. App.-Eastland 2010).  MERS was the nominee for Southside Bank and its
> successors and assigns. MERS had the authority to transfer the rights and interests in
> the Deed of Trust to CitiMortgage. The Plaintiffs' complaints about the role of MERS
> in this matter lack merit.
>
> It is further noted that the role of MERS has been the subject of federal multidistrict
> litigation in *In re: Mortgage Electronic Registration Systems (MERS) Litigation*, 659
> F. Supp.2d 1368 (U.S. Jud. Pan. Mult. Lit. 2009). The MERS system is merely an
> electronic mortgage registration system and clearinghouse that tracks beneficial
> ownerships in, and servicing rights to, mortgage loans. *Id*. at 1370. The system is
> designed to track transfers and avoid recording and other transfer fees that are
> otherwise associated with the sale. *Id*. at 1370 n. 6. MERS is defined in Texas
> Property Code § 51.0001(1) as a "book entry system," which means a "national book
> system for registering a beneficial interest in security instrument and its successors
> and assigns." As noted in *Athey*, mortgage documents provide for the use of MERS
> and the provisions are enforceable to the extent provided by the terms of the
> documents. The role of MERS in this case was consistent with the Note and Deed of

Trust.

Plaintiffs' allegations that the transfer was not valid are mere conclusions and do not state a plausible breach of contract claim.  Furthermore, the Court agrees that Plaintiffs lack standing to contest any assignment.  Recently, a court addressed this issue and found as follows:

> Plaintiff has no standing to contest the various assignments as she was not a party to the assignments. Even if she has standing, her allegations are without merit because MERS was given the authority to transfer the documents in the Deed of Trust. The Restatement (3d) of Property offers no support for Plaintiff's claims. As MERS is a beneficiary and nominee for both the originating lender and its successors and assigns by the express language in the Deed of Trust, the situation falls within an exception to the general rule that a party holding only the deed of trust cannot enforce the mortgage. See Comment e to the Restatement (3d) of Property (Mortgages) § 5.4. Section 5.4 additionally notes that a "transfer of an obligation secured by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise." Plaintiff makes no allegations that the parties in this case agreed otherwise. Finally, while the Note may not specifically mention MERS, the Note and Deed of Trust must be read together in evaluating the terms…thus, the Note and Deed of Trust are construed together as a single instrument.

*Eskridge v. Fed. Home Loan Mortgage Corp. et al.*, Case No. 6:10-CV-00285-WSS (W.D. Tex. Feb. 24, 2011).

Plaintiffs have alleged no facts that would allow Plaintiffs to enforce a contract in which they are not a party and there is no allegation that the contract was entered into for the benefit of Plaintiffs.  Therefore, Plaintiffs have failed to allege a plausible claim for breach of contract because they cannot plead facts showing the existence of a valid contract between Plaintiffs and Defendant. A review of the complaint illustrates no factual allegations that would support some theory that Defendant is not the proper holder of the Note and Deed of Trust.  Therefore, Plaintiffs' breach of contract claim based upon  a "split the note" theory should be dismissed.

Defendant next moves to dismiss Plaintiffs' breach of contract claim premised on violations

of HUD and FHA regulations because there is no private right of action.  Plaintiffs assert that

Defendant failed to conduct a face-to-face interview, failed to make a reasonable effort to arrange

such a meeting, failed to inform Plaintiffs of the alternate sources of assistance, and failed to accept

partial payments, all in contravention of HUD and FHA regulations.

> A recent case addressed this issue and found as follows:
>
> First, the contract cause of action and the wrongful foreclosure claim are premised on separate theories of liability. As previously stated, a wrongful foreclosure action compensates aggrieved parties for the lost possession of their property, *Peterson*, 980 S.W.2d at 823, whereas an action for breach of contract claim compensates for one's failure to comply with mutually agreed upon terms. Because the parties explicitly incorporated the HUD regulations into their agreement, the "documents and regulations constitute an integrated contract." *Hernandez v. Home Savings Assoc. of Dallas*, 606 F.2d 596, 601 (5th Cir.1979) (finding that HUD regulations incorporated into mortgage documents become part of the contract). Thus, failure to comply with the regulations made part of the parties' agreement may give rise to liability on a contract theory because the parties incorporated the terms into their contract. Indeed, courts have recognized that claims for failure to comply with the HUD regulations in question are best classified as a breach of contract. *See, e.g., Buis v. Wells Fargo Bank, N.A.*, 401 F. Supp.2d 612, 616 (N.D. Tex. 2005) ("As Buis contends that Wells Fargo failed to adhere to the provisions of the deed of trust, his claim is properly characterized as one for breach of contract"); *Leggette*, 2005 WL 2679699, at *2 ("Because under Texas law a deed of trust is governed by the same rules of interpretation that apply to contract ... her action is properly framed as a breach of contract claim") (internal citations omitted).

*Baker v. Countrywide Home Loans, Inc.*, No. 3:08-CV-0916, 2009 WL 1810336 *5 (N.D. Tex. June

24, 2009). Plaintiffs are not asserting a private cause of action for HUD or FHA violations, but

instead assert a breach of contract claim for violation of these regulations that Plaintiffs assert were

incorporated into the Note and Deed of Trust.  Therefore, this breach of claim is plausible and

Defendant's request for dismissal should be denied.

Defendant next moves to dismiss Plaintiffs' breach of contract claim because there are no

facts alleged to support the requisite elements of a contract claim in connection with the purported

Texas Property Code violations.  In order to establish a claim for breach of contract, a plaintiff must establish: (1) the existence of a valid, enforceable contract; (2) they performed or tendered performance; (3) defendant breached the contract; and (4) defendant's breach caused plaintiffs' damages. *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

Defendant asserts that there are no facts alleged supporting payments for the time period from April 2010 to June 2010.  Defendant argues that there are no facts supporting the three-month period leading up to the institution of foreclosure proceedings, such as whether Plaintiffs made their loan payments or communicated or attempted to communicate with Defendant.

Plaintiffs have pleaded a plausible breach of contract claim.  The Second Amended Complaint clearly states that Plaintiffs made payments as instructed through August 2010 when Defendant refused and returned their payments.

Defendant also asserts that Plaintiffs have not stated a plausible claim for breach of contract under the Texas Property Code or RESPA.

RESPA requires a "loan servicer" to timely respond to a QWR from a borrower.  12 U.S.C. § 2605(e).  A loan servicer is "the person responsible for servicing of a loan." 12 U.S.C.§ 2605(i)(2). Loan servicing means "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan...and making the payments of principle and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).  A QWR is correspondence that adequately identifies the borrower and provides reasons for the borrower's belief "that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  12 U.S.C. §

2605(e)(1)(B).  Within 60 days of receiving a QWR, a loan servicer must (a) make appropriate corrections in borrower's account; (b) provide the borrower with a written explanation of why the account is correct and who the borrower may contact for further assistance; or (c) provide the borrower with the information requested, or a written explanation of why the information is unavailable or cannot be obtained by the servicer and who the borrower may contact for further assistance.  12 U.S.C. § 2605(e)(2)(A)-(C).

Plaintiffs do not allege facts sufficient to establish they sent a QWR to Defendant.  Plaintiffs do not attach their writings to the complaint or otherwise set forth the alleged contents of those writings.  A QWR is a vehicle by which a customer can request information about the servicing of a loan.  Plaintiffs provide no allegations in the amended complaint of what specific questions were asked by Plaintiffs, what specific responses were provided by Defendant, what specific violations of RESPA occurred, and what damages resulted from the violations.  Therefore, this claim should be dismissed.

Defendant correctly points out that Plaintiffs' alleged Property Code claim is mere speculation and there are no facts that support a claim under the Property Code.  Moreover, Plaintiffs fail to point out what provisions of the Property Code are at issue.  No facts have been alleged that show a violation of the unnamed sections of the Property Code, and any Property Code claims should be dismissed.

Therefore, to the extent that Plaintiffs assert a breach of contract claim based upon violations of RESPA and the Texas Property Code, these claims should be dismissed.

**Unreasonable Collection Efforts Claim**

Under Texas law, "[u]nreasonable collection is an intentional tort." *EMC Mortg. Corp. v.*

*Jones*, 252 S.W.3d 857, 868 (Tex. App.2008, no pet.).  "[T]he elements are not clearly defined and the conduct deemed to constitute an unreasonable collection effort varies from case to case." *Id.* To recover on this claim, Plaintiffs must prove that Defendant's debt collection efforts "amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *Id.* at 868-69(citations omitted); *Steele v. Green Tree Servicing, LLC*, No. 3:09-CV-0603, 2010 WL 3565415 *6 (N.D. Tex. Sept. 7, 2010). The reasonableness of conduct is judged on a case-by-case basis.  *B.F. Jackson, Inc. v. CoStar Realty Information, Inc.*, 4:08-CV-3244, 2009 WL 1812922 at *5 (S.D. Tex. May 20, 2009) (citing *EMC Mortgage Corp.*, 252 S.W.3d at 868). Generally, mental anguish damages alone will not establish a right of recovery; the plaintiff must suffer some physical or other actual damages in order to be entitled to relief."  *Id.*

 Defendant moves to dismiss Plaintiffs' unreasonable collection efforts claim because Plaintiffs fail to identify any conduct by Defendant that would amount to "a course of harassment." Plaintiffs assert that Defendant exceeded the bounds of reason because it continually misstated the amount due for Plaintiffs' monthly payments, instructed Plaintiffs to pay the wrong amount every month, which purportedly caused Plaintiffs' account to go into default, increased their monthly payment without explanation on numerous occasions, repeatedly failed to respond to Plaintiffs' reasonable requests for clarification on the amount of their monthly payments, repeatedly misquoted the amount Plaintiffs had to pay for their monthly payments, and refused to accept Plaintiffs' payments in August 2010.  Based upon Plaintiffs' allegations, the Court finds that this claim may be plausible and the motion to dismiss should be denied.  Although the Court finds that it is a close call, Defendant should be able to develop the facts in a motion for summary judgment.

**Texas Debt Collection Act Claim**

Section 392.304(a)(8) of the Texas Finance Code states that, "in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that misrepresents the character, extent, or amount of a consumer debt." Tex. Fin. Code § 392.304(a)(8).  For a statement to constitute a misrepresentation under the TDCA, Defendant must have made a false or misleading assertion. *Reynolds v. Sw. Bell Tel., L.P.*, No. 2-05-356-CV, 2006 WL 1791606 *7 (Tex. App.-Fort Worth June 29, 2006, pet. denied). A collection notice or balance statement misstating the amount owed on a debt constitutes a misleading assertion regarding the amount of that debt under the TDCA. *See Baker v. Countrywide Home Loans, Inc.*, 3-08-cv-0916, 2009 WL 1810336 *7 (N.D. Tex. June 24, 2009); *see also Steele v. Green Tree Servicing, LLC*, No. 3:09-cv-0603, 2010 WL 3565415 *5, n.6 (N.D. Tex. Sept. 7, 2010).  The TDCA does not prevent a debt collector from "exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." Tex. Fin. Code § 392.301(b)(3); *see Sweet v. Wachovia Bank and Trust Company*, No. Civ.A. 3:03-CV-1212-R, 2004 WL 1238180 *3 (N.D. Tex. Feb.26, 2004).

Defendant next moves to dismiss Plaintiffs' TDCA claim asserting that there are no facts that would  support a claim under TDCA.[1]  Defendant argues that Plaintiffs allege that the amounts of the payments and the amount due and owing on the loan were misrepresented, but they do not allege why the amount of their new payment was wrong or why the amount due and owing was excessive. Defendant also argues that Plaintiffs fail to allege what actions were taken that were prohibited by

---

[1]  Plaintiffs assert that Defendant argues that it is not a debt collector under the TDCA.  Although the Court does not find Defendant made such an argument, even if the argument was advanced, it fails.  The Court notes that the TDCA has a broader definition of a debt collector. *See* Tex. Rev. Civ. Stat. Ann. art. 5069-11.01(c).

law.  Plaintiffs respond that they have pleaded sufficient facts with regard to their injuries, including

damages for direct and indirect economic damages, loss of creditworthiness, slander, mental anguish,

acute psychic trauma, and mental anguish.   However, Plaintiffs fail to respond to the crux of

Defendant's argument that there are no facts that would support a TDCA claim.  The Court agrees.

No other facts are alleged to support the claims under the TDCA. Merely stating Defendant violated

the TDCA, without more factual allegations, is a legal conclusion couched as a factual assertion,

which does not survive a motion to dismiss. Plaintiffs' TDCA claim also fails to the extent Plaintiffs

object to the manner or means Defendant used to collect the loan. Plaintiffs provide no allegations

that Defendant did anything but exercise its right under the Deed of Trust to foreclose.

**Negligent Misrepresentation Claim**

In order to demonstrate a claim for negligent misrepresentation, Plaintiffs must show: (1) the

defendant made a representation in the course of its business, or in a transaction in which it had a

pecuniary interest; (2) the defendant supplied "false information" for the guidance of others in their

business; (3) the defendant did not exercise reasonable care or competence in obtaining or

communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying

on the representations.  *Horizon Shipbuilding, Inc. v. BLyn II Holding, LLC*, 324 S.W.3d 840, 850

(Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d

675, 686 n.24 (Tex. 2002)).  Notably, as to the second element of supplying false information, "the

misrepresentation at issue must be one of existing fact."  *BCY Water Supply Corp. v. Residential*

*Invs., Inc.*, 170 S.W.3d 596, 603 (Tex. App.—Tyler 2005, pet. denied).  "A promise to do or refrain

from doing an act in the future is not actionable because it does not concern an existing fact."  *Id.*

Promises of future conduct are insufficient to support a claim for negligent misrepresentation.

*New York Life Ins. Co. v. Miller*, 114 S.W.3d 114, 125 (Tex. App.—Austin 2003, no pet.).  To be actionable, Defendant's statements must pertain to an existing fact.  *Id.*

Defendant contends that Plaintiffs cannot allege an injury suffered in connection with the purported misrepresentation because they still reside on the Property.  Defendant further contends that Plaintiffs failed to allege any facts demonstrating that their reliance on the alleged misrepresentation was justifiable.  Defendant also argues that the claim is barred because there is a contract between the parties.

Plaintiffs assert that they do allege several misrepresentations that pertain to existing facts, such as Defendant's representation that Plaintiffs only had to continue to make their monthly payments in the original amount due and that Defendant would look into their account.  Plaintiffs assert that they relied upon Defendant's representations and continued to make their payments, but Defendant began foreclosure on the Property

"[W]hen a written contract exists, it is more difficult for a party to show reliance on subsequent oral representations."  *Beal Bank, S.S.B. v. Schleider*, 124 S.W.3d 640, 651 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).  Generally, "negligent misrepresentation is a cause of action recognized in lieu of a breach of contract claim, not usually available where a contract was actually in force between the parties."  *Airborne Freight Corp. Inc. v. C.R. Lee Enters., Inc.*, 847 S.W.2d 289, 295 (Tex. App.—El Paso 1992, writ denied); *see Scherer v. Angell*, 253 S.W.3d 777, 781 (Tex. App.—Amarillo 2007, no. pet) (explaining that "there must be an independent injury, other than breach of contract, to support a negligent misrepresentation finding.").

Plaintiffs' claim does relate to future conduct that Defendant would investigate, and not foreclosure if payments were made.  As a promise of future conduct, Defendant's statements are not

actionable as a negligent misrepresentation claim.  Plaintiffs again fail to state any facts supporting

justifiable reliance.  In addition, all of the damages asserted flow from the contract.  Even taking

these misrepresentations as pertaining to existing fact, Plaintiffs insufficiently allege the last element

of a misrepresentation claim, justifiable reliance.

**Gross Negligence Claim**

Defendant also argues that dismissal of Plaintiffs' gross negligence claim is appropriate

because it is defective as a matter of law.  Plaintiffs argues that Defendant breached a duty of care

it owed to Plaintiffs.  In order to establish gross negligence, a plaintiff must prove the following

elements: (1) when viewed objectively from the defendant's standpoint, the act or omission

complained of must involve an extreme degree of risk, considering the probability and magnitude

of the potential harm to others; and (2) the defendant must have actual, subjective awareness of the

risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of

others. *Lee Lewis Constr., Inc. v. Harrisson*, 70 S.W.3d 778, 785 (Tex. 2001).

"The threshold inquiry regarding a gross negligence claim is whether a legal duty existed."

*RT Realty, L.P. v. Texas Utilities Electric Co.*, 181 S.W.3d 905, 914 (Tex. App.—Dallas 2006, no

pet.)  "The Texas Supreme Court has declined to impose an implied duty of good faith and fair

dealing in every contract, though it has recognized that such a duty may arise as a result of 'a special

relationship between the parties governed or created by a contract.'" *UMLIC VP LLC v. T & M Sales*

*& Envtl. Sys., Inc.*, 176 S.W.3d 595, 612 (Tex. App.—Corpus Christi 2005, pet. denied) (quoting

*Arnold v. Nat'l Cnty. Mut. Fire Ins.*, 725 S.W.2d 165, 167 (Tex. 1987)). "Special relationships"

include those relationships marked by shared trust or an imbalance in bargaining power.  *Id.*

"[A]bsent a 'special relationship,' any duty to act in good faith is contractual in nature and its breach

does not amount to an independent tort." *Id.*

In Texas, there is "no special relationship between a mortgagor and mortgagee." *Collier v. Wells Fargo Home Mortg.*, No. 7:04-CV-086-K, 2006 WL 1464170, at *8 (N.D. Tex. May 26, 2006) (citing cases).   Here, any duty of good faith is ultimately based upon the parties' contractual obligations.  Plaintiffs allege no facts indicating that Defendant's contractual obligations required it to act consistent with a duty of good faith. Without such an obligation, no duty of care arises that would support an independent claim for gross negligence.  Accordingly, Plaintiffs' claim for gross negligence should be dismissed.

### RECOMMENDATION[2]

Based upon the findings discussed above, the Court RECOMMENDS that Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint (Dkt. #17) be **GRANTED** in part and **DENIED** in part.

The following causes of action should be dismissed: (1) Texas Debt Collection Act Claim; (2) Negligent Misrepresentation; (3) Gross Negligence; (4) any Texas Property Code claims; and (5) RESPA claims.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge.  28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by

---

[2]  In a footnote, Defendant requests that the Court dismiss other claims asserted by Plaintiffs that Defendant asserts were "passing references" in the Second Amended Complaint.  The Court declines to address matters raised in a footnote or substantially in a reply brief.

the district court of the proposed findings and recommendations and from appellate review of factual

findings accepted or adopted by the district court except on grounds of plain error or manifest

injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th

Cir. 1988).

**SIGNED this 28th day of April, 2011.**


_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE